■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER CREARY, Appellant. [877 NYS2d 208]—

Appeal by the defendant from a judgment of the County Court, Suffolk County (J. Doyle, J.), rendered December 18, 2006, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officers are granted, the indictment is dismissed, and the matter is remitted to the County Court, Suffolk County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On the afternoon of October 31, 2005, a weekday, a police sergeant on routine patrol saw what appeared to be a late-model car parked in a lot in front of an auto repair shop. Since the car "stood out," the sergeant pulled into the lot and stopped his vehicle behind and perpendicular to the car. According to the sergeant, the three men occupying the car looked "quickly" at him and then "quickly turned back." The front-seat passenger made "a motion towards the center console area." The defendant, who was the rear seat passenger "was looking to exit the vehicle, but [the sergeant] told him to remain within the vehicle." The sergeant checked the driver's license and registration which were in order and, after approximately five minutes, confirmed that the defendant had a vehicle being worked on in the repair shop. The sergeant then allowed the defendant to exit the vehicle to go inside the shop to speak with the mechanic. Meanwhile, noticing that the front seat passenger appeared extremely nervous, the sergeant asked him, "Do you have anything? Is there anything that you are hiding that would make you nervous?" According to the sergeant, the passenger replied, "No, you can check, I will get out." When the passenger exited, the sergeant told him to walk toward the front of the vehicle. The sergeant looked inside the car and "observed the handle of a black handgun protruding from underneath the front passenger's seat." The front seat passenger, the driver, and the defendant were all arrested and transported to the precinct where, without administering *Miranda* warnings (*see*

*Miranda v Arizona*, 384 US 436 [1966]), the sergeant advised each individually that, unless the police could establish who actually owned the gun, all three would be charged. After a brief discussion with his brother, the defendant stated that the gun was his and that he would give a statement to that effect to the detectives. The defendant was subsequently advised of his *Miranda* rights and admitted to interrogating detectives that the gun was his.

The defendant alone was indicted for criminal possession of a weapon in the third degree. He moved, inter alia, to suppress the weapon and his statements to the police. After a hearing, those branches of his motion were denied and he was thereafter convicted following a jury trial. We reverse.

Confining the occupants of a parked vehicle to their car, even temporarily, is the constitutional equivalent of a stop. Thus, "before the police can forcibly or constructively stop an individual as was done here by the order to remain in the car there must be some articulable facts, which initially or during the course of the encounter, establish reasonable suspicion that the person is involved in criminal acts or poses some danger to the officers" (*People v Harrison*, 57 NY2d 470, 476 [1982]; *see People v Packer*, 49 AD3d 184, 188 [2008], *affd* 10 NY3d 915 [2008]). Here, before pulling the police vehicle behind the defendant's vehicle in the parking lot and ordering the defendant to remain in his vehicle, the Sergeant did not have grounds for a reasonable suspicion that the defendant or the other occupants of the vehicle were either involved in criminal acts or posed some danger to him (*see People v Taylor*, 31 AD3d 1141 [2006]). Accordingly, that branch of the defendant's omnibus motion which was to suppress the gun should have been granted.

Moreover, the defendant's statements at the precinct should have been suppressed as well. When, at the precinct, the sergeant told the defendant that, unless the police could determine who the true owner of the gun was, all three occupants of the vehicle would be charged with its possession, he was engaging in the functional equivalent of interrogation in that he knew or should have known that his comments were reasonably likely to elicit an incriminating response (*see Rhode Island v Innis*, 446 US 291, 301 [1980]; *People v Ferro*, 63 NY2d 316, 319, 322 [1984], *cert denied* 472 US 1007 [1985]). The defendant's response was therefore the product of custodial interrogation and, because he had not been given *Miranda* warnings, his statement to the sergeant and his statements to the detectives which followed shortly thereafter should have been suppressed (*see People v Campbell*, 123 AD2d 878 [1986]).

In light of our determination, the defendant's remaining contentions are academic. Skelos, J.P., Fisher, Santucci and Balkin, JJ., concur.