People v Creary (2025 NY Slip Op 01230)

People v Creary

2025 NY Slip Op 01230

Decided on March 5, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 5, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
CHERYL E. CHAMBERS
JANICE A. TAYLOR
DONNA-MARIE E. GOLIA, JJ.

2022-05295
 (Ind. No. 1365/20)

[*1]The People of the State of New York, appellant,
v
Brandon Creary, respondent.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, Andrew Z. Wu, and Jonathan E. Maseng of counsel), for appellant.
Camille O. Russell, Westbury, NY, for respondent.

DECISION & ORDER
Appeal by the People from an order of the Supreme Court, Queens County (David J. Kirschner, J.), dated May 5, 2022. The order, insofar as appealed from, after a hearing, granted that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the order is affirmed insofar as appealed from.
On December 21, 2020, around 9:20 a.m., police officers responded to a residence in Queens. The investigation related to a report that a resident of the property (hereinafter the complainant) had been threatened by her ex-boyfriend with a gun at approximately 4:20 a.m. earlier that morning. Upon arrival, the officers spoke with the complainant, who identified the defendant as her ex-boyfriend and roommate. The complainant also stated that, although the defendant had initially fled their apartment in his car after threatening her, she now suspected that he was back inside his bedroom because the door was closed and his cellphone could be heard ringing from inside the bedroom.
Later on during the course of the investigation, at about 9:50 a.m., the complainant pointed out the defendant's car to the officers. The car was parked across the street and several car lengths away from the residence. Further, the complainant informed the officers that the defendant's friend, later identified as Dylan Hamilton, was inside the car. Officers then approached the parked car and observed Hamilton, apparently asleep, in the driver's seat. The officers attempted to open the driver's side doors and, finding them locked, asked Hamilton to open the door. When Hamilton then opened the door, the officers observed and recovered a gun from the door's pocket.
The defendant was later arrested and both the defendant and Hamilton were subsequently indicted, inter alia, for criminal possession of a weapon in the second degree. The defendant moved, among other things, to suppress the gun recovered from the car.
At a suppression hearing, a police officer testified that when she approached the car during the investigation she observed Hamilton, who appeared to be asleep, in the front driver's seat. The officer also testified that she did not observe anyone else in the car, although she was not able [*2]to see into the back of the car because the windows were tinted.
The officer's body worn camera video was admitted into evidence at the hearing. The video depicts, among other things, the officer approaching the car and, upon reaching the front driver's side door, immediately attempting to open that door. After finding the door apparently locked, the video depicts the officer knocking on the front driver's side door window and twice, in a matter of seconds, asking Hamilton to open the door. The officer testified at the hearing that she had asked Hamilton to open the door for safety reasons and in particular because the alleged firearm had not been located. On cross-examination, however, the officer acknowledged that Hamilton was not suspected of any criminality, nor did the officer have any information that the car contained evidence of a crime.
After the hearing, the Supreme Court, inter alia, granted that branch of the defendant's omnibus motion which was to suppress the gun. The People appeal.
"A police officer may approach a parked car for an objective, credible reason, not necessarily indicative of criminality" (People v Contreras, 194 AD3d 835, 836; see People v Potter, 208 AD3d 802, 804; People v Eugenio, 185 AD3d 1050, 1051). However, "[w]here . . . a vehicle is lawfully parked on the street and neither it nor its occupant is under any restraint, and the police have no grounds to suspect the occupant of criminality at that point, requesting the occupant to step out of the vehicle creates a new, unauthorized restraint" (People v Eugenio, 185 AD3d at 1051; see People v Contreras, 194 AD3d at 837; People v Thomas, 275 AD2d 276, 278). In other words, an officer's directive to a person to exit a lawfully parked car must be based upon a reasonable belief that the person has committed, is committing, or is about to commit a felony or misdemeanor, or that the person posed some danger to the officer (see People v Contreras, 194 AD3d at 837; People v Creary, 61 AD3d 887, 889).
Here, the investigating officers had an objective, credible reason, not necessarily indicative of criminality, for initially approaching the defendant's car, authorizing them to request information from Hamilton (see People v Eugenio, 185 AD3d at 1051). The officers did not, however, request any information; rather, they immediately and unsuccessfully attempted to open the car's doors and then twice asked Hamilton to open the door. Significantly, when this interaction occurred, more than five hours had elapsed from the reported crime involving the defendant, Hamilton was not considered a suspect, and no testimony was elicited that the officers suspected that the car contained evidence of a crime. Under the circumstances of this case, the officers did not have a lawful basis to subject Hamilton to the additional restraint by effectively directing him to open the car's door (see People v Contreras, 194 AD3d at 837; People v Eugenio, 185 AD3d at 1051).
The People's remaining contention is without merit.
Accordingly, the Supreme Court properly granted that branch of the defendant's omnibus motion which was to suppress physical evidence (see People v Dubuisson, 206 AD3d 757, 759; People v Pearson, 59 AD3d 743, 744).
LASALLE, P.J., CHAMBERS, TAYLOR and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court